UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jerry Jenkins, ) | |
| ) | Civil Action No. 5:14-cv-03687-BHH-KDW |
| Petitioner, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Warden, FCI Edgefield, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner Jerry Jenkins ("Petitioner"), a federal prisoner, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a Motion to Dismiss or in the alternative for Summary Judgment on November 25, 2014. ECF No. 20. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. ECF No. 21. Petitioner filed a Response in Opposition to Respondent's Motion on December 22, 2014. ECF No. 23. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Motion for Summary Judgment. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 20, be granted.

    I.    Factual and Procedural Background

Petitioner is currently incarcerated at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). ECF No. 20-1. Petitioner was previously incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania which is where the incident that resulted in the prison disciplinary action involved in this case took place. *Id.*; ECF No. 1 at 1. In

1

his habeas Petition, Petitioner alleges he was denied due process because (1) his witness was unable to testify completely and (2) he was unable to question the officer who made the allegations. *Id.* at 3. Additionally, Petitioner maintains that the Central Office refused to produce a video of the event upon Petitioner's request, and therefore, the Disciplinary Hearing Officer ("DHO") did not review the video "which clearly would have shown a completely different set of events." *Id.* at 4. Petitioner asks this court to order that the incident report be expunged from his record and his good conduct time restored. *Id.* at 4.

> A.  The Incident Report and Preliminary Investigation

According to his incident report, Officer Bednarski felt a "bump" around the front of Petitioner's waist during a random pat down on October 16, 2013. ECF No. 20-3. The incident report also indicates that Officer Bednarski then ordered Petitioner to "stand still." *Id.* In the incident report Officer Bednarski maintains that Petitioner ran down the hall and he "followed [Petitioner] ordering him to stop [] then saw a bag tossed into the room. [Bednarski] entered the room [where he saw Petitioner] grab the bag and toss[] it into the hallway. [Bednarski] was not able to recover the item." *Id.* Based on these events, Petitioner was charged with destroying and/or disposing of any item during a search or attempt to search, Code 115, and refusing an order, Code 307. *Id.* at 2.

On October 16, 2013, at approximately 7:45 p.m. Petitioner received a copy of the incident report including the charges against him. *Id.* The matter was referred to the Unit Discipline Committee ("UDC"), and at the UDC hearing Petitioner was advised of his rights and stated that he understood them. *Id.* at 1-2. According to the investigation report, Petitioner stated "it is not true the whole thing is false." *Id.* at 2. Based on the description of the incident the investigating officer found "the staff member to be more credible than [Petitioner and found] the

2

charges of 115 and 307 to be valid charges." *Id.* at 2. Following the UDC hearing, the matter was referred to the DHO because of the nature of the charges, and Petitioner was placed in Administrative Detention pending the disposition of the charges. *Id.* at 1.

        B.        DHO Hearing and Appeal

On October 18, 2013, at approximately 1:20 p.m., Petitioner was given written notice of a disciplinary hearing before the DHO as well as information about his rights at the DHO hearing. ECF No. 20-4. Petitioner asked for the assistance of a staff representative, and specifically requested Mr. F. Hribar. *Id.* He also asked that three named witnesses—inmates Skidmore, Castilla, and Craig—testify on his behalf at the hearing. *Id.* Petitioner indicated that inmates Skidmore and Castilla would testify Petitioner previously told them that Bednarski had touched him on a prior occasion. Petitioner indicated that inmate Craig would testify as an eyewitness to the October 16, 2013 pat down and that inmate Craig knew what Petitioner had in his hand. *Id.*

On November 14, 2013, a hearing before the DHO was conducted. ECF No. 20-6. Petitioner was present and was advised of his rights. *Id.* Petitioner waived his right to have a staff representative present and waived the presence of inmate witnesses Skidmore and Castilla. *Id.* at 1-2. During the hearing inmate Craig testified:

> I was present when this happened, we were walking down the hall, and Bednarski pulled us both over, and he searched [Petitioner] and his bag while I stood and waited. He finished his search, and gave [Petitioner] his bag back, and [Petitioner] then walked off. [Bednarski] then started searching me, and next thing I know he ran down the hall after [Petitioner] yelling at him. That is all I know about the situation, no I did not see [Petitioner] throw anything.

*Id.* at 2. In his own hearing testimony, Petitioner again denied the charges. *Id.* He testified that on October 9, 2013, Bednarski searched him and touched him "in areas that no other staff touched [him]." *Id.* Petitioner testified that on October 16, 2013, Bednarski pulled him aside and searched his laundry bag and after touching Petitioner's waistline "asked what it was." *Id.* Petitioner

3

testified that he told Bednarski that it was the "laundry bag stopper" which he pulled out from his waistline and showed Bednarski. *Id.* Petitioner further testified:

> The bag did not even have a string attached. [Bednarski] continued to pat search me and touch my nuts again and down the other leg when I told him "that's it, you're done." The officer told me to "hang loose" and he walked on the other side of the grill to pat another inmate down. I walked down the hall at that time because I thought he was done with me and the officer came running up behind me and said "Where is it?" All I had was my big gray laundry bag, and the officer stated I must have thrown the item out of the room, but I did not even enter the room yet.

*Id.*

After consideration of all the evidence, the DHO found that Petitioner committed the prohibited acts of "115, Destroying and/or disposing of any item during a search or attempt to search." *Id.* The DHO did not find that Petitioner refused to obey a direct order. *Id.* The DHO imposed sanctions including disallowance of 40 days good conduct time, forfeiture of 60 days of non-vested good conduct time, disciplinary segregation for 360 days suspended to 180 days clear conduct, and two years loss of visitation privileges. *Id.* at 3. The DHO prepared a written report detailing his decision, the evidence relied upon, and the reasons for the sanctions imposed. *Id.* A copy of this written decision was delivered to Petitioner on January 8, 2014. ECF No. 1-1 at 5. Petitioner appealed this decision through the Bureau of Prisons ("BOP") administrative remedy process, but his appeal was denied and the disciplinary action and sanctions were upheld. ECF No. 20-8.

II.     Standard of Review

   A.     Motion to Dismiss

Pursuant to Rule 12(b)(6) a motion to dismiss may be granted when, construing allegations in light most favorable to plaintiff and assuming facts alleged in the complaint to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could

4

be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. *Custer v. Sweeney*, 89 F.3d 1156, 1163 (4th Cir. 1996) (noting that in rule 12(b)(6) analysis, court need not accept plaintiff's "unwarranted deductions," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted); *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 217–18 (4th Cir. 1994).

    B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.     Habeas Corpus and its Exhaustion Requirement

Generally, a habeas petitioner must present his claims to an appropriate forum before filing his petition in this court. This requirement of exhaustion is largely unavoidable. *Ex parte Hawk*, 321 U.S. 114, 117 (1944). "Unlike petitions brought under [28 U.S.C.] § 2254, which challenge the validity of a state court conviction and sentence, petitions brought under § 2241 generally challenge the execution or implementation of a sentence, such as parole matters, sentence computation, calculation of good time credits, prison disciplinary actions, and transfers." *Clemmons v. South Carolina*, No. 0:08–607–RBH, 2008 WL 2845636, *1 (D.S.C. July 18, 2008). Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts consistently require prisoners to exhaust their administrative remedies prior to seeking

habeas review under § 2241. *See Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 490–91 (1973) (requiring exhaustion in § 2241 matter); *Timms v. Johns*, 627 F.3d 525, 531 (4th Cir. 2010) (noting courts require "exhaustion of alternative remedies before a prisoner can seek federal habeas relief") (internal quotation marks omitted). Exhaustion allows prison officials to develop a factual record and "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Respondent does not dispute that Petitioner exhausted his available administrative remedies "as to the presentment of witnesses at the discipline hearing." ECF No. 20 at 4. However, Respondent argues that Petitioner's administrative remedies appeal "did not address any failure to procure or introduce video surveillance evidence." *Id.* Therefore, Respondent maintains that those parts of the Petition addressing the video surveillance footage should be dismissed for failure to exhaust administrative remedies. *Id.*

III.    Discussion

Petitioner contends that his due process rights were violated during the course of his disciplinary hearing and that due process allows for evidence to be provided to prove or disprove any allegation. ECF No. 1 at 4. Specifically, Petitioner argues that his due process rights were violated in three ways. *See id.* First, Petitioner argues that the DHO refused "to allow [his] witness to testify completely to the events that occurred, specifically that a prior negative altercation had occurred between [Petitioner] and [Bednarski]." *Id.* at 3. Next, Petitioner argues that he was not allowed to question the events or Bednarski. *Id.* Finally, Petitioner argues that the video camera footage from the date and time of the event should have been reviewed to determine the veracity of Bednarski's sequence of events. *Id.* Specifically, Petitioner maintains that he made the request in his BP-11 to the Central Office, but he never received a response.

Petitioner contends that the "video would have shown that no running took place, and that no tossing of the 'bag' ever occurred yet DHO refused to review what was requested." *Id.* In conclusion, Petitioner argues that he "has been denied any rights to prove his innocence by the actions of the staff [during his disciplinary investigation] and compounded by the silence of the Central Office." *Id.* at 4.

When a prisoner faces the possible loss of good-conduct credits in prison disciplinary proceedings, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Id.* at 564–71. Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." S*uperintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Respondent argues that Petitioner was afforded his due process rights pursuant to the *Wolff* requirements. ECF No. 20 at 7. Specifically, Respondent maintains that Petitioner was given "advance written notice of the charges more than twenty four hours before the DHO hearing [and] was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative." *Id.* Furthermore, Respondent maintains Petitioner's witness was permitted to testify as to Petitioner's version of the facts. With regards to Petitioner's cross-examination of Bednarski argument, Respondent argues that Petitioner has "no constitutional right of confrontation or cross-examination in disciplinary actions." *Id.* at 8.

The undersigned finds that Petitioner, who was sanctioned with the loss of good-conduct time and temporary loss of certain privileges, was given advance written notice of the charges

more than twenty-four hours before his November 14, 2013 disciplinary hearing. ECF Nos. 20-4; 20-5. Petitioner was offered the opportunity to present evidence in the form of documents or witnesses, and to have the assistance of a staff representative. *See id.* Petitioner waived his right to have a staff representative present and waived the presence of two of the three named witnesses. ECF Nos. 20-5; 20-6. He called a fellow inmate as a witness and testified on his own behalf. *See id.* Applying the *Wolff* criteria to this case, it appears that Petitioner received all the process due him in connection with his disciplinary hearing. Though Petitioner argues his witness was not permitted to testify fully, specifically regarding "a prior negative altercation" between Petitioner and Bednarski, the undersigned finds that this testimony was irrelevant to the October 16, 2013 matter and did not deprive Petitioner of due process. Regarding Petitioner's cross-examination argument, as Respondent maintains, the Fourth Circuit has clearly held that inmates do not have cross-examination rights in disciplinary proceedings. *See Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990) (internal citation omitted) ("*Wolff* concluded that there was no constitutional right of an accused to confrontation and cross examination, because such rights would present greater hazards to institutional interests and because 'adequate bases for decision' could be established through the use of other procedures."); *see also Wolff*, 418 U.S. at 567 ("If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls."). Therefore, Petitioner was not deprived of any due process rights based on his first two allegations.

Turning to the alleged withholding of certain video footage, Respondent contends that Petitioner's claim for deprivation of due process based on the Central Office's failure to produce the footage, and the DHO's failure to watch the video should be dismissed based on Petitioner's

9

failure to exhaust administrative remedies. ECF No. 20 at 4. Alternatively, Respondent maintains that Petitioner's claim should be dismissed because there is no evidence that Petitioner requested the video and even if he had, he would not have been entitled to receive such evidence. *Id.* at 9.

In the appeal of his disciplinary conviction, Petitioner maintained that DHO Montgomery refused to allow Petitioner's only witness to testify at his DHO hearing to acquittal type information. ECF No. 20-8 at 1. There, Petitioner attached the "Declaration of Donald Craig" as an exhibit to his appeal. *Id.* at 2. In his appeal, Petitioner does not mention that he requested video footage of the incident or that it was withheld. *See id.* Though Petitioner appealed his disciplinary conviction and argued in his appeal that he was denied due process, the undersigned finds that Petitioner did not raise this precise issue of video surveillance to the reviewing Director's attention. Therefore, the undersigned recommends that the withheld-video-footage argument is not ripe for habeas review because Petitioner did not procedurally exhaust this claim.[1] However, out of an abundance of caution, the undersigned will address the merits of this argument.

Assuming Petitioner requested the video footage in preparation for his hearing, the undersigned finds that Petitioner does not have a constitutional right to access the prison video footage in a disciplinary case. The *Wolff* court held that prisoners must be allowed the opportunity to present documentary evidence in a disciplinary hearing, and video footage would not fall into the permitted evidentiary category. 418 U.S. at 566. However, the right to present evidence has its limitations. As the *Wolff* court indicated:

> [W]e must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is

---

[1] Should the court determine Petitioner properly exhausted this claim the undersigned notes that no evidence has been presented to the court that confirms the existence of the video footage Petitioner asserts supports his claim.

10

> required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

*Id.* The Seventh Circuit held that a prisoner was not entitled to similar video footage in *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011). There, the court held that "prison officials are not required to disclose evidence that would unduly threaten institutional safety and [w]e have held that an inmate is not entitled to disclosure of an exculpatory surveillance video if allowing the inmate to see the tape would entail a security risk." *Id.* Additionally, the *Jones* court recognized that "one 'bona fide security justification' for non-disclosure is that the video might allow the inmate to learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future." *Id.* at 848-49 (internal citation omitted). Based on the potential safety risk in disclosing video surveillance footage to inmates, the undersigned finds that Petitioner's due process rights were not violated by such footage being withheld.[2] *See Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) (holding that hearing officers may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration).

Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment should be granted insofar as Petitioner claims violations of procedural due process in connection with his disciplinary hearing.

---

[2] The undersigned recognizes the obvious risks of giving inmates access to video surveillance in disciplinary actions. However, to the extent that video evidence of a prison incident exists, the risks would be minimized if the DHO officer viewed the video outside the presence of inmates.

11

IV.     CONCLUSION

Based on the foregoing reasons, the court recommends that Respondent's Motion, ECF No. 20 be GRANTED and that the Petition in this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

April 24, 2015                                        Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation.**